# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 21-cv-02654-NYW

E.S.B.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[2]

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff E.S.B.'s ("Plaintiff") Complaint and Petition for Review filed on September 29, 2021. [Doc. 1]. This matter arises under a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI"), both originally filed with the Social Security Administration ("SSA") on September 24, 2018.[3] [Doc. 10-5 at 310, 312].[4] The issues before the Court have been fully

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiffs by initials only." D.C.COLO.LAPR 5.2(b). Accordingly, this Court refers to Plaintiff using her initials only.

[2] On July 9, 2021, President Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security. No further action is necessary to continue this suit pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); Fed. R. Civ. P. 25(d).

[3] Although Plaintiff states that she filed concurrent Title II and Title XVI applications for benefits on September 14, 2018, the copies of those applications presented in the record are dated September 24, 2018. [Doc. 10-5 at 310, 312]. The Court utilizes the date indicated on the applications—September 24, 2018—throughout this Memorandum Opinion and Order.

[4] When citing to the Administrative Record, the Court utilizes the page number found in the bottom right-hand corner of the page. For all other documents, the Court cites to the document and page number generated by the Electronic Case Filing ("ECF") system.

briefed. On January 25, 2022, Plaintiff submitted her Opening Brief. [Doc. 15 ("Brief")]. On April 7, 2022, Defendant Kilolo Kijakazi, Acting Commissioner of the SSA ("Defendant" or the "Commissioner"), submitted her Response Brief. [Doc. 20 ("Response")]. On April 26, 2022, Plaintiff submitted her Reply Brief. [Doc. 21 ("Reply")]. The questions presented are ripe for resolution and this Court finds that they may be resolved without oral argument. For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

## BACKGROUND

Plaintiff, who was 48 years old at the time of the decision under appeal, alleges that she is disabled within the meaning of sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act (the "Act"). *See* [Doc. 10-3 at 72]; 42 U.S.C. §§ 401–33. She sought disability benefits under Title II of the Act and SSI benefits under Title XVI of the Act due to alleged physical disabilities related to ongoing seizures, as well as a variety of mental disabilities. *See* [Doc. 15 at 1–2]. Plaintiff states that her seizures began on July 1, 2013, and that she has been largely unable to work since their onset. [*Id*. at 3; Doc. 10-5 at 310]. Plaintiff's longest prior term of gainful employment was reportedly as an admissions counselor for an online school for five years. [Doc. 10-2 at 50; Doc. 10-9 at 1707]. Between 1988 and 2013 she also worked as a collections agent, as an advertising clerk, and in a variety of other positions. [Doc. 10-2 at 25–26, 50–52; Doc. 10-5 at 318–38]. Though it did not rise to the level of gainful employment, Plaintiff states that her most recent experience consisted of several weeks of work at her landlord's candy shop during the Christmas season. [Doc. 10-2 at 15, 49–50].

Plaintiff has seen multiple medical providers, and the record includes a range of opinions regarding Plaintiff's various conditions. *See generally* [Doc. 10-2 at 21–25 (ALJ decision citing to specific treatment records); Doc. 10-7 to Doc. 10-10 (treatment records)]. Particularly relevant

to the Court's review is the report of Dale E. Bowen, Ph.D. ("Dr. Bowen"), the psychological consultative examiner, from a May 8, 2019 evaluation, [Doc. 10-9 at 1705–08], as the ALJ's treatment of this opinion in her RFC analysis is central to Plaintiff's arguments. *See* [Doc. 15 at 11–14; Doc. 21 at 4–5]. In one portion of the report, Dr. Bowen stated that

> [m]y impression is that [Plaintiff] has no limitation in her ability to understand basic work-related instructions or expectations. There is no limitation in memory functioning. There is minor limitation in her ability to sustain concentration and in persistence and pace. There is moderate to marked limitation in social interaction functioning related to maladaptive personality traits. She has mild to moderate limitation in her ability to adapt to typical work-related stressors or situations calling for independent decision-making.

[Doc. 10-9 at 1708]. Dr. Bowen also noted that Plaintiff "was responsive to questions, but she seemed to give conflicting information at times and [the examiner's] impression was that she was not being forthright." [*Id.* at 1707].

On September 24, 2018, Plaintiff applied for disability insurance and SSI benefits under the Act.[5] [Doc. 10-5 at 310, 312]. These claims were initially denied on January 2, 2019. [Doc. 10-4 at 156–59, 162–65]. Upon reconsideration on May 14, 2019, they were denied a second time. [*Id*. at 172–74, 179–81]. Pursuant to Plaintiff's request, a telephonic hearing on Plaintiff's application for benefits was held before Administrative Law Judge Rebecca LaRiccia (the "ALJ") assigned to the case on January 28, 2021. [Doc. 10-2 at 43–71]. On March 15, 2021, the ALJ issued her decision, finding that Plaintiff was "not disabled" under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Act. [*Id*. at 13, 27–28].

Plaintiff filed a Request for Review of Hearing Decision with the SSA Appeals Council, which denied Plaintiff's request in an order dated July 26, 2021. [*Id*. at 5]. The ALJ's decision

---

[5] SSI is a federal income supplement program that is designed to help aged, blind, and disabled people who have little or no income to provide cash to meet basic needs for food, clothing, and shelter. *See* SSA, https://www.ssa.gov/ssi/ (last visited Dec. 9, 2022).

thus effectively became the Commissioner's final determination as of that date.  *See* 20 C.F.R. §§ 404.900(a)(5), 404.955(b), 404.981, 416.1400(a)(5), 416.1455(b), 416.1481, 422.210(a). Plaintiff timely initiated this action for judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) on September 29, 2021.  *See* [Doc. 1].  The Court has thoroughly reviewed the facts presented in the Parties' briefs and in the Administrative Record, and now considers the legal standards that govern its resolution of this case.

## LEGAL STANDARD

### I.  Standard of Review

After the Commissioner issues a final decision, a claimant "may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision."  42 U.S.C. § 405(g).  This review is not expansive; indeed, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" and binding upon a district court.  [*Id.*].  This means that the Court will uphold the Commissioner's decisions where an ALJ has applied the correct legal standard in a decision "supported by substantial evidence."  *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). Failure to apply the correct legal standard "is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  "Substantial evidence," in turn, need only constitute sufficient evidence "as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

Given the centrality of the ALJ's consideration of the evidence to the instant case, the Court must also analyze whether she considered all of the relevant evidence and adequately explained her rationale for crediting or discrediting it.  *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998).  Where an ALJ fails to consider or adequately explain a relevant piece of evidence,

4

a court may remand an appeal for further fact-finding or clarification. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (noting that an ALJ's failure to explain evidence relevant to each factor in an appeal related to SSI benefits was grounds for remand). That said, while a reviewing court should—and will—meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Thompson*, 987 F.2d at 1487.

## II.     Evaluation Process

The Commissioner applies a five-step sequential evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five-step process). "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

An individual is disabled for the purposes of the Act where her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905. When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including those that are severe and those that are non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. *See* SSR 83-10, 1983 WL 31251, at *7 (Jan. 1, 1983).

"'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ is not tasked with identifying "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine [a] RFC within that category," and as such the Court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004). It is this legal framework that will govern the Court's resolution of the instant matter.

## ANALYSIS

Plaintiff contends that the Commissioner's determination should be remanded due to the ALJ's errors at Steps Three and Four.[6] Although the Commissioner applies a five-step sequential evaluation process for determining whether a claimant is disabled under the Act, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), this Court may consider the challenges out of sequential order in circumstances like these. *See Reynolds v. Colvin*, No. 12-cv-01100-MSK, 2013 WL 4459868 (D. Colo. Aug. 20, 2013) (analyzing challenge to RFC finding before analyzing challenge to step three finding and affirming ALJ decision); *Johnson v. Astrue*, No. 10-cv-00782-CMA, 2011 WL 42293 (D. Colo. Jan. 6, 2011) (analyzing step five determinations before analyzing challenge to step three and affirming ALJ decision). Here, the Court first considers Plaintiff's challenge to the ALJ's RFC considerations at Step Four because of the centrality of the ALJ's Step-Four reasoning to Plaintiff's arguments regarding the sufficiency of her Step Three analysis.

**I.    Failure to Properly Consider Plaintiff's Mental Health Limitations in the ALJ's Step Four RFC Analysis**

Plaintiff alleges that the ALJ's Step Four RFC analysis did not properly consider Plaintiff's mental health limitations. [Doc. 15 at 11–14; Doc. 21 at 4–6]. She reasons that the ALJ's RFC determination was "not consistent with the medical opinion the ALJ chose to rely upon." [Doc. 21 at 4]. The Commissioner counters by arguing that the ALJ's determination can be "harmonized" with the medical opinion in question. [Doc. 20 at 21–25]. The Commissioner

---

[6] Plaintiff also initially argued that the ALJ's decision was constitutionally defective and therefore invalid. *See* [Doc. 15 at 14–18]. Plaintiff had contended that pursuant to the Supreme Court's decision in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), the then-Acting Commissioner of the SSA was improperly appointed, and therefore the Commissioner's delegation of decision-making authority to the ALJ in this case was unconstitutional. *See* [*id.*]. However, in her Reply Plaintiff states that—due to recent rulings on similar arguments nationwide—she "no longer believes this argument has merit and withdraws her contentions on the issue." [Doc. 21 at 6]. It follows that the Court declines to address the issue here.

further contends that even if the ALJ's determination was inconsistent with the medical opinion in question (because she only found it to be "somewhat persuasive," and there is no requirement that ALJs adopt medical opinions "in toto"), there was no reversible error. [*Id.* at 24]. Upon review of the record before it and in light of the relevant legal standards, the Court finds that the ALJ did not err in her Step Four RFC determination.

Plaintiff contends that the ALJ's RFC determination rests on the opinion of Dr. Bowen regarding Plaintiff's abilities but fails to address each of his findings regarding Plaintiff's limitations. [Doc. 21 at 4]. Specifically, Plaintiff argues in her Reply that "the ALJ provides no limitation correlating to Dr. Bowen's finding that she *cannot adapt* to work related stressors or situations calling for independent decision making." [*Id.* (emphasis added)]. As Plaintiff notes, "where the ALJ fails to point to specific evidence supporting each conclusion, the RFC findings are not supported by substantial evidence and a remand is required." [Doc. 15 at 12 (citing *Mondragon v. Colvin*, No. 14-cv-02599-RM, 2016 WL 1178279, at *6 (D. Colo. Mar. 28, 2016))]. Plaintiff claims that the ALJ failed to "point to specific evidence" identifying "another evidentiary basis in the record for her ultimate RFC limitations and the RFC is therefore unsupported by substantial evidence." [*Id.* at 14]. Plaintiff does not argue that the ALJ failed to consider contradictory evidence or that she disregarded opinions from other medical providers or resources. *See generally* [*id.*; Doc. 21]. Therefore, the Court understands Plaintiff's argument to be that the ALJ erred by failing to point to specific evidence justifying the omission of an RFC limitation corresponding to Plaintiff's ability to adapt.

Respectfully, Plaintiff's argument fails here because the ALJ's RFC determination addresses limitations on Plaintiff's ability to adapt in the workplace. To begin, Dr. Bowen did not state that Plaintiff *cannot adapt*, but rather that she "has *mild to moderate limitation in her ability*

8

*to adapt* to typical work-related stressors or situations calling for independent decision-making." [Doc. 10-9 at 1708 (emphasis added)]. And in her RFC analysis, the ALJ found that Plaintiff had "moderate limitations in her ability to 'interact with others' and 'adapt or manage oneself.'" [Doc. 10-2 at 23 (emphasis omitted)]. Additionally, in summarizing Dr. Bowen's opinion, the ALJ stated that "his exam generally support[ed] limiting the claimant's social interaction and adaptation ability." [*Id.* at 25]. The ALJ incorporated this aspect of Dr. Bowen's opinion in her RFC finding by explaining that

> [t]he individual can occasionally interact with coworkers and supervisors, but could not work in a teamwork environment. The individual can work in close proximity to, but not directly with the general public. The individual can adapt to gradually introduced workplace changes.

[*Id.* at 19]. Therefore, the Court finds that the RFC specifically addressed Plaintiff's ability to adapt by limiting her potential positions to those where any workplace changes are introduced gradually.

Even if the ALJ did omit limitations noted in Dr. Bowen's report, there is no requirement that ALJs adopt every aspect of a medical source's report in their RFC determination. *See Rex v. Colvin*, 26 F. Supp. 3d 1058, 1063 (D. Colo. 2014) (noting that an ALJ is "not obligated to include in her residual functional capacity assessment every limitation possibly suggested by a medical source"); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"). Instead, SSA regulations require ALJs to address the persuasiveness "of the medical opinions" in the case record. 20 C.F.R. § 404.1520c(b). When evaluating the persuasiveness of a medical opinion, ALJs are to give primary importance to (1) its supportability, based on the relevant objective medical evidence and explanations presented by the medical source, and (2) its consistency with the evidence from other

9

medical and nonmedical sources in the claim. 20 C.F.R. § 404.1520c(c)(1)–(2). Here, the ALJ clearly articulated that her RFC assessment was supported by "the medical evidence of record as a whole." [Doc. 10-2 at 25]. In the context of this record, the ALJ stated that she found Dr. Bowen's report to be only "somewhat persuasive." [*Id.*].

In her RFC analysis, the ALJ appropriately showed that Dr. Bowen's observations were somewhat supported by, and consistent with, other evidence in the record as required by 20 C.F.R. § 404.1520c(c)(1)–(2). To the extent that Dr. Bowen's opinion regarding Plaintiff's limited ability to adapt is supported, the ALJ cited treatment records showing a long history of mental health impairments. *See, e.g.*, [*id.* at 16–17, 22–25]. Indeed, the ALJ found at Step Two that Plaintiff's unspecified depressive, anxiety, and antisocial personality disorders were severe impairments. [*Id.* at 16]. However, at Step Four the ALJ explained that Plaintiff's treatment records also showed that her "behavior, mood, and affect were often within normal limits." [*Id.* at 22 (citing to over sixty locations within Plaintiff's treatment records for support)]. The ALJ also pointed to significant medical evidence showing that when Plaintiff took her medication as prescribed, it was effective and that there was "no objective basis to support the claimant being unable to perform tasks involving limited interactions with others and only occasional changes in a job setting." [*Id.*]. Because the ALJ analyzed Dr. Bowen's report in the context of other contradictory evidence in the record and found it to be only somewhat persuasive, it follows that the ALJ would include some, but not all, of Dr. Bowen's opinions regarding Plaintiff's limitations in her ultimate RFC determination.

In sum, Plaintiff's argument falls short for two reasons. First, the ALJ's RFC determination includes a limitation correlating to Plaintiff's ability to adapt in the workplace—specifically, Plaintiff's ability to adapt by limiting her potential positions to those where any workplace changes

are introduced gradually. [*Id.* at 19]. Second, even if the ALJ's RFC determination lacked such an explanation, the ALJ's failure to include every one of Dr. Bowen's opinions regarding Plaintiff's limitations in her RFC determination would not justify remand. Because the Court does not reverse the ALJ's factual determinations where they are supported by substantial evidence, the ALJ's RFC determination at step four was not in error. *See Howard*, 379 F.3d at 949.

## II.   Legal and Factual Errors in Failing to Find Plaintiff Disabled at Step Three

Plaintiff next contends that the ALJ erred by first acknowledging that Plaintiff had severe impairments due to her epilepsy at Step Two, while proceeding to conclude that Plaintiff did not satisfy the requirements of Listing 11.02 (epilepsy) at Step Three. [Doc. 15 at 5–11]. Plaintiff relies on the standard set by *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996), to argue that the ALJ failed to point to evidence sufficiently explaining her Step-Three determination. [Doc. 15 at 9–11]. The Commissioner responds by arguing that "[s]ubstantial evidence supports the ALJ's decision to find Plaintiff's impairments did not meet or equal a Listing 11.02." [Doc. 20 at 19]. The Commissioner then points to evidence in the record that supports the ALJ's finding that Plaintiff's noncompliance precluded her listing under Listing 11.02. [*Id.* at 20]. The Commissioner then points the Court to *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), to argue that—even if the ALJ's explanation at Step Three was lacking—because the ALJ thoroughly reviewed the evidence related to Plaintiff's noncompliance elsewhere, her decision was still supported by substantial evidence and should be upheld.

Respectfully, the Court agrees with the Commissioner. The ALJ thoroughly analyzed the record pertaining to both Plaintiff's history of seizures and treatment compliance in several portions of her decision beyond those specifically devoted to Listing 11.02. Plaintiff has a well-

documented history of seizures that her doctors have characterized as general tonic-clonic.[7] *See, e.g.*, [Doc. 10-2 at 55–56; Doc. 10-6 at 358; Doc. 10-9 at 1703, 1709, 1924]. At Step Two, the ALJ found that Plaintiff's history of seizure disorder diagnoses constituted a severe impairment and that her seizures significantly limited her "ability to perform basic work activities." [Doc. 10-2 at 16]. However, at Step Three the ALJ nonetheless found that Plaintiff was not disabled under Listing 11.02 of the Act. [*Id.* at 17]. Under § 11.02, an applicant satisfies the criteria for a listing of epilepsy when he or she provides a "detailed description of a typical seizure" that is characterized by "[g]eneralized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months *despite adherence to prescribed treatment*." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02 (emphasis added) (citations omitted). Here, the ALJ noted Plaintiff's history of frequent and generalized tonic-clonic seizures but reasoned that "claimant's impairments do not meet or medically equal the requirements of section 11.02 (epilepsy), as her noncompliance precludes consideration of such a Listing." [Doc. 10-2 at 17]. Plaintiff argues that this decision was erroneous because it "was not further discussed nor was it supported by citations or reference to any of the medical evidence." [Doc. 15 at 5].

While the ALJ's analysis at Step Three is lacking, this Court respectfully disagrees with Plaintiff's challenge to the sufficiency of the ALJ's overall consideration of the medical evidence contained in the record. As Plaintiff correctly observes, at Step Three ALJs are "required to discuss

---

[7] Generalized tonic-clonic seizures, also known as "grand mal" seizures, "cause[] a loss of consciousness and violent muscle contractions." Mayo Clinic, *Grand Mal Seizure* (Feb. 24, 2021), https://www.mayoclinic.org/diseases-conditions/grand-mal-seizure/symptoms-causes/syc-20363458 (last visited Dec. 9, 2022). These seizures have two stages. First, in the tonic phase, which lasts about ten to twenty seconds, the person experiences both a loss of consciousness and a systemic muscle contraction, which often cause the person to fall. *Id.* In the second, clonic phase, the person's "muscles go into rhythmic contractions, alternately flexing and relaxing," typically for one to two minutes or less. *Id.* "Unconsciousness may persist for several minutes after the convulsion has ended," and confusion, fatigue, and severe headache are common following such seizures. *Id.*

the evidence," including their "reasons for accepting or rejecting evidence," and set out their specific findings as to whether the claimant meets or equals a listing under the Act. *Clifton*, 79 F.3d 1007, 1009–10; *see also Kepler*, 68 F.3d at 391. In *Clifton*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") noted that bare conclusions made by an ALJ at Step Three are "beyond meaningful judicial review." *Clifton*, 79 F.3d 1007 at 1009. However, the Tenth Circuit has also noted that "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a [S]tep [T]hree conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross*, 431 F.3d at 733. Seeking to avoid "unwarranted remands," the *Fischer-Ross* court reasoned that in some cases an ALJ's failure to sufficiently explain their Step Three findings constitutes harmless error. *See id*. at 730, 732–33. Under *Fischer-Ross*, such error is harmless when an "ALJ's confirmed findings at [S]teps [F]our and [F]ive . . ., coupled with indisputable aspects of the medical record, conclusively preclude [a] [c]laimant's qualification under the listings at [S]tep [T]hree." *Id.* at 735. Put slightly differently, an ALJ's Step Four and Five findings, together with the record as a whole, must be sufficient for the reviewing court to be persuaded that "[n]o reasonable fact finder could conclude otherwise" at Step Three. *See id*.

Here, the Court finds that the ALJ erred in failing to appropriately explain the basis for her determination that Plaintiff was precluded from listing in her Step-Three analysis. At Step Three, the ALJ explained only that Plaintiff's "noncompliance precludes consideration" of listing under § 11.02. [Doc. 10-5 at 17]. The ALJ did not lay out her reasons for accepting or rejecting evidence in the record that led her to this conclusion. *See* [*id.*]. But the Court's inquiry is not cabined only to the evidence or analysis laid out at Step Three; rather, as the *Fischer-Ross* court noted, "[n]either *Clifton*'s letter nor spirit require a remand for a more thorough discussion of the listings when

13

confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Fischer-Ross*, 431 F.3d at 734.  For example, in *Thomas v. Berryhill*, No. 17-cv-02423-KLM, 2019 WL 1375676, at *3–4 (D. Colo. Mar. 27, 2019), the ALJ first explained the listing criteria for a variety of joint-related conditions at Step Three.  The ALJ then found that the claimant's impairments did not meet or equal those listings, explaining only that the available evidence did not demonstrate the necessary criteria.  *Id.*  However, the *Thomas* court noted that the ALJ thoroughly discussed the relevant medical evidence supporting his determinations at Step Four.  *Id.* at *5.  The *Thomas* court also explained that the claimant had failed to point to evidence that contradicted the ALJ's findings, and that nothing in the ALJ's Step Four analysis showed any obvious error related to his Step Three findings.  *Id.*  Therefore, under *Fischer-Ross*, the court reasoned that "to the extent the ALJ erred by not discussing the evidence at [S]tep [T]hree of his analysis . . . he did not commit reversible error due to his later, thorough discussion of the evidence at [S]tep [F]our."  *Id.*; *see also Baldwin v. Barnhart*, 167 F. App'x 49, 51–53 (10th Cir. 2006) (differentiating the instant case from *Clifton* because, unlike the *Clifton* ALJ, the *Baldwin* ALJ specifically adopted medical opinions supporting his finding, and noting that under *Fischer-Ross* it did not matter that this support was found outside of the Step Three analysis); *Richards v. Berryhill*, No. 16-cv-02899-CMA, 2017 WL 5664511, at *5 (D. Colo. Nov. 27, 2017) (finding that the ALJ's one-sentence Step Three analysis was insufficient, but upholding the decision because the ALJ "made very detailed findings, with numerous specific references to the evidence and lengthy explanations of his reasoning" at Step Four).

14

Here, as in *Thomas* and *Richards*, the ALJ thoroughly reviewed the evidence relating to both the severity of Plaintiff's seizures and her medication compliance at Step Four.[8] [Doc. 10-2 at 20–21]. At Step Four, the ALJ acknowledged evidence indicating that Plaintiff had "a history of seizure disorder and pseudo seizure disorder." [*Id.* at 21]. However, the ALJ also pointed to evidence indicating that Plaintiff's "epilepsy would be well controlled with medication compliance." [*Id.*]. The ALJ explained that "[c]ontinuous EEG monitoring also failed to document any seizures [sic] activity, even with cutting her medications in half, sleep deprivation and provocation maneuvers." [*Id.*]. The ALJ took account of Plaintiff's testimony regarding the severity of her symptoms, which led her to question why Plaintiff "repeated[ly] failed to follow-up with outpatient neurology despite repeated advisements to do so." [*Id.*]. The ALJ also explained her concern that one of Plaintiff's doctors "suspected issues with medication adherence." [*Id.*]. As a result, the ALJ found that Plaintiff's "degree of seizure activity testified to" was "completely unsupported by the medical evidence of record." [*Id.*].

As such, the Court confirms the ALJ's Step Four findings for the purposes of *Fischer-Ross* analysis. Plaintiff does not challenge the ALJ's Step Five determination. *See* [Doc. 15; Doc. 21]. Therefore, the Court considers whether the ALJ's analysis at Step Four is sufficient to cure the deficiencies in her Step Three analysis. To qualify for listing under section 11.02, a claimant's seizures *must* persist "despite adherence to prescribed treatment." 20 C.F.R. pt. 404, subpt. P, app.

---

[8] The Court notes that the ALJ also considered evidence regarding Plaintiff's medication compliance in portions of her decision beyond her step four RFC analysis. For example, at step three, the ALJ noted that "[o]verall, she does comply with medication requirements and attends medical appointments with reminders; although she has been non-compliant on occasion." [Doc. 10-5 at 18]. The ALJ also cited a function report completed by Plaintiff that stated she needed reminders to take her medications, [*id.* at 379], two medication forms completed by Plaintiff, [*id.* at 405, 413]), and testimony from the hearing, which includes statements by Plaintiff evincing both compliance and noncompliance. *See e.g.*, [*id.* at 56–57].

1, § 11.02.  While Plaintiff points to evidence in the record showing that she sometimes had seizures while taking her medication as prescribed, *see* [Doc. 15 at 7], nowhere in her Brief or Reply does she refute the ALJ's findings that she was also often noncompliant.  *See* [Doc. 15; Doc. 21].  Further—and as the ALJ concluded—the record reveals that Plaintiff has not adhered consistently to her prescribed treatment.  *See* [Doc. 10-2 at 21; Doc. 10-8 at 1250 ("[Plaintiff] does now understand the [i]mportance of medication adherence. . . .  She states that now that she is taking her medications as prescribed she has noticed that she is completely seizure free.")].  Therefore, the ALJ's confirmed findings at Step Four and unchallenged findings at Step Five, coupled with Plaintiff's inconsistent compliance with prescribed treatment, conclusively preclude her qualification for listing at Step Three.  As a result, the Court respectfully concludes that remand would "needlessly prolong[] administrative proceedings" and constitute the type of "unwarranted" result the Tenth Circuit has cautioned against.  *Fischer-Ross*, 431 F.3d at 730.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) The Commissioner's final decision is **AFFIRMED**.

DATED:  December 12, 2022                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge